UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAYLA PLASTER,[1]

Plaintiff,

v.

Case No. 2:25-cv-12045
District Judge Jonathan J.C. Grey
Magistrate Judge Kimberly G. Altman

HEIDI WASHINGTON, MARTI KAY SHERRY, AMY CLARK, LT. OWENS, KIM CARGOR, JARRETT, CARMEN McINTYRE, THEADIA CAREY, JAMES BLESSMAN, DAVID DAWDY, FADI IBRAHIM, E'COE HILL, ROSILYN JINDAL, and M.D. RAZIUDDIN ALI,

Defendants.

_________________________________/

**REPORT AND RECOMMENDATION TO DENY WELLPATH DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 12, 18)**
**AND**
**GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT (ECF No. 25)**
**AND**
**GRANT IN PART AND DENY IN PART MDOC DEFENDANTS' MOTION TO DISMISS (ECF No. 33)**[2]

## I. Introduction

[1] Plaster has requested that the Court use her chosen name, Shayla, in its filings.
[2] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

This is a prisoner civil rights case. Plaintiff Shayla Plaster, proceeding *pro se*, is suing the above captioned defendants in their individual and official capacities alleging violations of the Fourth, Eighth, and Fourteenth Amendments. She also raises claims under the Americans with Disabilities Act (ADA), Rehabilitation Act (RA), and state law. *See* ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 14).

Before the Court are four motions. Defendants Raziuddin Ali, E'Coe Hill, Fadi Ibrahim, and Rosilyn Jindal (Wellpath Defendants) have filed a motion to dismiss for failure to state a claim. (ECF No. 12). Hill and Jindal have separately moved to dismiss the complaint for claims arising after May 1, 2024, when their employer VitalCore Health Strategies, LLC began contracting with the Michigan Department of Corrections (MDOC) to provide healthcare services in the place of Wellpath. (ECF No. 18). In addition to her response to the motions (ECF No. 27), Plaster has moved for leave to amend the complaint (ECF No. 25). Finally, defendants James Blessman, Theadia Carey, Kim Cargor, Amy Clark, David Dawdy, Jarrett, Carmen McIntyre, Owens, Marti Kay Sherry, and Heidi Washington (MDOC Defendants) also filed a motion to dismiss for failure to state a claim. (ECF No. 33). MDOC Defendants have also responded in opposition to Plaster's motion for leave to amend. (ECF No. 31).

For the reasons that follow, the undersigned RECOMMENDS that Wellpath Defendants' motions to dismiss be DENIED and that Plaster's motion for leave to amend and MDOC Defendants' motion to dismiss be GRANTED IN PART and DENIED IN PART. If this recommendation is adopted, Washington and Chapman[3] would be dismissed from the case, and the remaining claims would be as outlined below.

## II. Background

### A. Original Complaint

Plaster's allegations are taken as true for the purposes of the motions before the Court. Plaster is a transgender prisoner being housed at the Thumb Correctional Facility (TCF). She was initially housed at the G. Robert Cotton Correctional Facility (JCF), and her complaint includes allegations related to conduct occurring during incarceration at both facilities. (ECF No. 1, PageID.2). Plaster was diagnosed with gender dysphoria and she was in the process of transitioning prior to incarceration. (*Id.*, PageID.4). In October 2012, she was incarcerated and her gender dysphoria, a severe mental disorder, was diagnosed by

[3] As will be explained, Plaster named Chapman as a defendant in the original complaint but not in the proposed amended complaint. Because the undersigned recommends that Plaster's motion to amend be granted, it follows that Chapman should be dismissed.

MDOC. (*Id.*). However, on August 29, 2013, her diagnosis was removed and replaced with "a simple Personality Disorder." (*Id.*, PageID.4-5).

Plaster's gender dysphoria diagnosis was reinstated on January 15, 2019. (*Id.*, PageID.5). She was diagnosed with "Gender Dysphoria, Unspecified" by Sherry, the Director of the Bureau of Health Care Services (BHCS). Plaster says that Sherry made this diagnosis so that transgender prisoners like Plaster would never "fit the criteria" for surgical intervention. (*Id.*). The stated reason for the particular diagnosis was that it could not be determined who was gender dysphoric prior to prison. (*Id.*).

On April 11, 2019, Plaster began receiving hormone therapy for her gender dysphoria, but knowing that hormone therapy alone would not suffice, she began requesting gender reassignment surgery from her doctors, mental health providers, and the Gender Review Committee (GRC). (*Id.*). She quotes MDOC Policy Directive 04.06.184(Q) as stating that "surgical procedures for initiation, advancement, or maintenance of sex reassignment shall be on a case by case basis" but that upon information and belief, not one request for reassignment surgery has been granted by the MDOC. (*Id.*).

Plaster then outlines her efforts beginning on July 6, 2022, of requesting gender reassignment surgery in the form of an orchiectomy (testicle removal) and vaginoplasty. On that date, Clark denied Plaster's request in her role as first level

reviewer for the GRC. (*Id.*, PageID.6). Then in November 2022, Plaster made two additional requests for surgery that were denied, one by a nurse practitioner and one by her psychologist, neither of whom are named defendants. (*Id.*). Plaster was evaluated for surgery again on January 27, 2023, and denied on February 7, 2023, by the GRC. (*Id.*). After this, Plaster made requests for other surgical intervention in hopes that at least one would be approved and her agony would be somewhat alleviated. She requested breast augmentation, thyroid reduction, voice modification surgery, facial feminization, blepharoplasty, laser hair removal, and gluteal augmentation. On May 24, 2023, Plaster was informed that no surgeries were approved by the GRC. (*Id.*).

Plaster was assessed again for surgery on July 3, 2023, and denied again on December 6, 2023. (*Id.*). On February 23, 2024, Plaster sent letters to Washington, the GRC, and the BHCS regarding her surgery requests, and she filed a grievance on February 27, 2024. (*Id.*, PageID.6-7). She then submitted an ADA request for accommodation, but was informed that her sole recourse was through BHCS and the grievance process. (*Id.*, PageID.7). At some point after this, Plaster was transferred to TCF, where she filed requests and grievances for surgical intervention, all of which were denied. (*Id.*).

Plaster also alleges that she was wrongly denied search accommodations. In November 2023, an updated MDOC Policy Directive permitted transgender

prisoners to request that pat downs and strip searches be conducted with staff of the same gender as the prisoner's gender identity (in this case, female). The regulation states that such requests are to be approved unless the prisoner has a history of inappropriate sexual behavior that poses a risk to staff. But in December 2023, Plaster's request for a search accommodation at JCF was denied due to her history of criminal sexual conduct (CSC). (*Id.*, PageID.8). Plaster says this is not in line with regulations because her criminal conviction does not automatically exclude her from the accommodation. (*Id.*). Nevertheless, Plaster was subjected to a humiliating strip search in front of a male officer without a female officer present, and defendant Owens rejected her requests for a female officer or body scanner. (*Id.*). Plaster says that the male officer conducting the search agreed with Plaster that her requests were reasonable and apologized for having to conduct the search. (*Id.*, PageID.9). She was strip searched again by male officers days later in an even more humiliating fashion. (*Id.*).

B. Proposed Amended Complaint

Plaster's proposed amended complaint (ECF No. 26) is substantially the same as her original complaint. Of note, in paragraph 27 Plaster replaces "GRC Defendants" with "Defendants McIntyre, Carey, Clark, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Ali," stating that they "each asserted Plaster 'does not

meet the criteria for surgical intervention.'" (*Id.*, PageID.217). Further down, additional paragraphs were added:

> 60) The GRC, by its nature, acts as a collective entity based on the voting power of <u>each individual member</u>. Defendants Sherry, Clerk, McIntyre, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindall, and Ali were all aware that hormone therapy alone would not suffice for Plaster's level of dysphoria, and knew that prolonged use of hormones resulted in a blood clot in her right leg . . . , yet continue voting to deny her requests for surgery.
>
> 61) Upon information and belief, as well as conversations with PA Couturier, each of these Defendants were notified of Plaster's history of suicidal thoughts and attempts, and were aware of her desire to die rather than continue living in the wrong body. Not one of these Defendants considered these factors when voting to deny the only relief likely to save Plaster's life. Each of these individuals authorized, approved, or knowingly acquiesced in conduct in violation of the Eighth Amendment.

(*Id.*, PageID.224-225).

Both complaints assert the following claims for relief:

- Violations of the ADA and RA against Washington and Sherry for a policy or custom to deny transgender or gender dysphoric prisoners surgical intervention,
- Violations of the Eighth Amendment and Michigan law against Sherry, Clerk, McIntyre, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Ali for voting to withhold surgical intervention,
- Violation of the Fourth Amendment right to privacy and bodily integrity against Owens for refusing to accommodate Plaster's reasonable request, and
- Fourteenth Amendment discrimination against Cargor and Jarrett for denial of the search accommodation based solely on Plaster's criminal conviction.

(ECF No. 1, PageID.16; ECF No. 26, PageID.228).

## III. Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations.'" *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009).

## IV. Discussion

### A. Wellpath Defendants

Wellpath Defendants argue that Plaster's allegations against them do not rise to the level of deliberate indifference to serious medical needs under the Eighth Amendment.

#### 1. Standard

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v.*

*McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Comstock*, 273 F.3d at 702-03 (quoting *Farmer*, 511 U.S. at 834). In *Farmer*, the Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." 511 U.S. at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703.

2. Application

Wellpath Defendants argue that Plaster's allegations do not meet the subjective standard required to sustain a deliberate indifference claim. This is because while the defendants were allegedly aware of Plaster's condition, Plaster was provided with medical treatment and simply disagrees with the treatment provided.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort

law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *see also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (noting that courts distinguish between cases where an inmate alleges a complete denial of medical care versus a claim that she received inadequate care, reiterating that federal courts are generally reluctant to second guess medical judgments). "It is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Wellpath Defendants cite the medical records attached to Plaster's complaint, which reflect that Plaster inquired about gender affirming surgery on January 27, February 7, and May 24, 2023, and was informed that surgery was not approved and that she did not qualify for surgical intervention. (ECF No. 1, PageID.40, 52). In May, the physician assistant discussed continued development with relationships at the University of Michigan for gender affirming care, and adjustments to hormone therapy were also discussed in relation to the risk of blood clots. (*Id.*, PageID.52). Plaster reported that the deep vein thrombosis in her leg had improved based on the last scan. (*Id.*). On February 18, 2025, Plaster was treated again for gender dysphoria and expressed frustration in not being approved for gender affirming surgeries. (*Id.*, PageID.25). Her labs and gender affirming physical changes were reviewed and were responding well to treatment, and

Plaster noted that the partial changes were gender affirming but also stressful, with complete transition constantly on her mind. (*Id.*). Her history of blood clots was noted but she was not concerned at that time. (*Id.*).

Defendants argue that Plaster's medical records show simply a difference in medical judgment rather than deliberate indifference to a serious medical need, citing *Fisher v. Fed. Bureau of Prisons*, 484 F. Supp. 3d 521 (N.D. Ohio 2020). The *Fisher* court discussed the denial of gender reassignment surgery to an inmate with gender dysphoria, noting that the Sixth Circuit has recognized gender dysphoria as a serious medical condition. However, the *Fisher* court also noted that "[t]he Sixth Circuit has not yet addressed whether a prison's failure to provide [gender reassignment surgery] to an inmate diagnosed with [gender dysphoria], when the prison is providing alternative treatment, constitutes a violation of the Eighth Amendment." *Id.* at 541. The court noted that in other circuit courts, "cases involving dueling medical experts will typically not support an Eighth Amendment claim." *Id.*

Plaster does not deny that she was treated for gender dysphoria in ways other than the surgeries she requested. However, like the plaintiff in *Fisher*, she does allege that Wellpath Defendants, who are members of the GRC, "have an unwritten custom of denying each request [for gender reassignment surgery]." (ECF No. 1, PageID.3). She goes on to say that her diagnosis was altered "to

prevent any trans prisoner from receiving surgical intervention within the MDOC as none would ever 'fit the criteria' for surgery." (*Id.*, PageID.5). She also says that "not one request for reassignment surgery has been granted by the MDOC" and her surgery is "medically necessary" but has been denied despite the risk of blood clots from alternative treatment. (*Id.*, PageID.5, 13).

In *Fisher*, the court noted that the majority of circuits found a blanket policy or de facto ban to deny surgery without consideration of an inmate's particular medical needs to potentially violate the Eighth Amendment. *Id.* at 543 (citing *Kosilek v. Spencer*, 774 F.3d 63, 91 (1st Cir. 2014), *Fields v. Smith*, 653 F.3d 550, 552 (7th Cir. 2011), *Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015), *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020)); *but see Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019) (finding that "sex reassignment surgery remains an issue of deep division among medical experts" and there is therefore no basis "to hold a state official deliberately (and constitutionally) indifferent, for doing nothing more than refusing to provide medical treatment whose necessity and efficacy is hotly debated within the medical community.").

Based on allegations of a blanket ban, the *Fisher* court followed the majority of circuit courts to decide the issue and found that the plaintiff's claim survived a motion to dismiss, reasoning:

> At the motion to dismiss stage, the Court only needs to determine whether Fisher has put forth sufficient facts to support a plausible claim

> that [gender reassignment surgery] is medically necessary to treat her [gender dysphoria] and defendants are deliberately indifferent to that necessity by denying her access to SRS based on [their] blanket ban policy against [gender reassignment surgery]. She has met that burden.

*Fisher*, 484 F.Supp.3d at 543-44. The undersigned recommends the same approach here. Plaster's allegations are sufficient to state a plausible claim for relief under the Eighth Amendment. As such, Wellpath Defendants' motions to dismiss should be denied.[4]

### B. MDOC Defendants

Plaster has also pled violations of the ADA, RA, Fourth, Eighth, and Fourteenth Amendments, and state law against MDOC Defendants, as outlined below.

#### 1. ADA and RA

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021) (quoting 42 U.S.C. § 12132). "The ADA and the

[4] Wellpath Defendants also argue that Plaster's allegations are "conclusory" and that she impermissibly lumps all defendants together in her claim against them. The undersigned disagrees. Plaster's complaint is clear, and her amended complaint more so, that each defendant as a member of the GRC decided against approving a surgical intervention, which states a plausible Eighth Amendment claim as discussed above.

Rehabilitation Act in this circuit share the same substantive standard." *G.S. by & through Schwaigert v. Lee*, 558 F.Supp.3d 601, 611 (W.D. Tenn. 2021) (citations omitted). "Thus, the court reviews claims under the Rehabilitation Act as though they were brought under the ADA." *Id.*

To bring a claim under the ADA, Plaster must show that (1) she has a disability; (2) she is a "qualified individual"; and (3) she was "being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of" her disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citing 42 U.S.C. § 12132). The same is true for her claims under the RA. *See* 29 U.S.C. § 794(a).

It is well-established that "mere allegations of inadequate medical care do not raise a viable discrimination claim." *Cannon v. Eleby*, 187 F.3d 634 (6th Cir. 1999); *see also Smith v. Aims*, No. 20-12013, 2023 WL 2297448, at *5 (E.D. Mich. Jan. 24, 2023); *Vandiver v. Corizon, LLC*, No. 16-13926, 2017 WL 6523643, at *4-5 (E.D. Mich. Dec. 21, 2017); *Stevens v. Hutchinson*, No. 1:13-CV-918, 2013 WL 4926813, at *4 (W.D. Mich. Sept. 12, 2013). An ADA or RA claim that is "merely an Eighth Amendment deliberate indifference claim in another statutory guise" is insufficient. *Watson v. Mohr*, No. 2:17-CV-457, 2017 WL 6383812, at *5 (S.D. Ohio Dec. 14, 2017), *report and recommendation adopted*, 2018 WL 836484 (S.D. Ohio Feb. 13, 2018).

Plaster has alleged violations of the ADA and RA on the part of Washington, who is the Director of MDOC, and Sherry, who is the Director of BHCS, for implementing policies to ensure that no gender dysphoric inmate will receive surgical intervention even if it is needed. (ECF No. 1, PageID.10). She also alleges that Washington violated these acts by refusing to grant her request for a search accommodation that would require female staff to conduct her searches. (*Id.*, PageID.11).

At the onset, MDOC Defendants correctly note that the treatment-related ADA and RA claims against Washington and Sherry are redundant. Where, as here, a plaintiff brings such claims against the highest-ranking official and one or more lower-ranking officials, all but the claims against the highest-ranking official should be dismissed as redundant. *See Thompson v. Washington*, No. 1:21-CV-683, 2022 WL 2128264, at *10 (W.D. Mich. June 14, 2022); *Plaster v. Washington*, No. 1:23-CV-591, 2024 WL 1446598, at *10 (W.D. Mich. Feb. 8, 2024), *report and recommendation adopted*, 2024 WL 1229903 (W.D. Mich. Mar. 22, 2024). Defendants are correct; the ADA and RA claims against Sherry should be dismissed.

As for Washington, MDOC Defendants say the ADA and RA claims should be dismissed because the ADA "specifically excludes being transgender and gender identity disorders as a disability under the ADA." (ECF No. 33,

PageID.308) (citing 42 U.S.C. §12211).[5] Under 42 U.S.C. §12211(b)(1), disability does not include "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, *gender identity disorders not resulting from physical impairments*, or other sexual behavior disorders." (emphasis added). While the Sixth Circuit has yet to weigh in on this argument, one district court in this Circuit has found that "[t]he clear result is that Congress intended to exclude from the ADA's protection both disabling and non-disabling gender identity disorders that do not result from a physical impairment." *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 754 (S.D. Ohio 2018). "The majority of federal cases have concluded as much." *Id.* (citing *Gulley–Fernandez v. Wisconsin Dep't of Corr.*, No. 15–CV–995, 2015 WL 7777997, at *2 (E.D. Wis. Dec. 1, 2015); *Mitchell v. Wall*, No. 15–CV–108–WMC, 2015 WL 10936775, at *1 (W.D. Wis. Aug. 6, 2015); *Diamond v. Allen*, No. 7:14–CV–124 HL, 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014); *Kastl v. Maricopa Cty. Cmty. Coll. Dist.*, No. CIV.02–1531PHX–SRB, 2004 WL 2008954, at *4 (D. Ariz. June 3, 2004)).

Other courts have disagreed, but noted that the *Parker* court adopted the apparent "majority approach." *See Doe v. Pennsylvania Dep't of Corr.*, No. 1:20-

[5] Plaster cites *Emery L. D. v. Comm'r of Soc. Sec.*, No. 2:24-CV-10713, 2025 WL 976685, at *7 (E.D. Mich. Mar. 14, 2025), *report and recommendation adopted*, 2025 WL 968284 (E.D. Mich. Mar. 31, 2025) in support of gender dysphoria as a disability. However, that case did not involve claims under the ADA or RA and therefore has no bearing on Plaster's claims.

CV-00023-SPB-RAL, 2021 WL 1583556, at *8–9 (W.D. Pa. Feb. 19, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 1115373 (W.D. Pa. Mar. 24, 2021). Most notably, the Fourth Circuit has found that "as a matter of statutory construction, gender dysphoria is not a gender identity disorder" and is therefore not excluded from ADA coverage. *Williams v. Kincaid*, 45 F.4th 759, 769 (4th Cir. 2022). The Supreme Court denied certiorari in *Williams*, but Justice Alito was joined by Justice Thomas in dissent, noting that the majority of federal cases, like *Parker*, have found gender dysphoria to fall into the exclusionary language of the ADA. *Kincaid v. Williams*, 143 S. Ct. 2414, 2419 n.3 (2023). Justice Alito found that the dissent in *Williams* "set out a reasonable contrary argument," noting that "'when the ADA was signed into law, gender identity disorder was understood to include what Williams alleges to be gender dysphoria,' that is, 'distress and discomfort from identifying as a gender different from the gender assigned at birth.'" *Id.* at 2417 (quoting *Williams*, 45 F.4th at 782-83). He also noted that the Fourth Circuit failed to explain whether gender dysphoria should fit into the statute's "final catch-all" category of "other sexual behavior disorders." *Id.* Given that the statutory provision was written in 1990, and that the American Psychiatric Association's Diagnostic and Statistical Manual later replaced "gender identity disorder" with "gender dysphoria," it is likely that Congress intended to exclude what is now called gender dysphoria from the ambit

of the ADA, rather than finding that "the statutory exclusion is without any effect" as the Fourth Circuit held. *Id.* at 2416-18.

The undersigned agrees with this reasoning and the reasoning from *Parker* that Congress "contemplated that some gender identity disorders result from physical impairments and some do not" and that Congress "chose to protect from disability discrimination only those that do." 307 F. Supp. 3d at 755. Gender dysphoria falls into the categories outlined by Congress to be excluded from the ADA except where it results from a physical impairment. Here, as in *Parker*, Plaster did not "allege that her gender dysphoria was caused by a physical impairment or that gender dysphoria always results from a physical impairment." Therefore, Plaster's ADA claims should be dismissed. Furthermore, the same applies to her RA claims, because that statute contains the exact same exclusionary language. 29 U.S.C. §705(20)(F). This would result in Washington being dismissed from the case entirely.

2. Eighth Amendment

MDOC Defendants next argue that Plaster has failed to state an Eighth Amendment deliberate indifference claim against Sherry and the GRC members (McIntyre, Carey, Clark, Blessman, and Dawdy). As was analyzed above, the allegations of a "blanket ban" on gender reassignment surgery set forth a plausible

Eighth Amendment claim. MDOC Defendants offer additional reasons that the claim should be dismissed as to them, which will be discussed below.

a. PLRA Physical Injury Requirement

Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." This argument fails for two reasons. First, as MDOC Defendants note, Plaster has alleged headaches, upset stomach, constant nausea, and rashes/hives on her arms and legs. (ECF No. 1, PageID.22). However, MDOC Defendants say that these injuries, which resulted from Plaster's anxiety and depression relating to her condition, are *de minimus* because "[t]hough unfortunate, depression and anxiety are not uncommon in today's society." (ECF No. 39, PageID.438) (citing *Colbert v. Comm'r of Soc. Sec.*, No. 2:15-CV-13467, 2017 WL 1214187, at *6 (E.D. Mich. Feb. 10, 2017), *report and recommendation adopted*, 2017 WL 1018149 (E.D. Mich. Mar. 16, 2017)). *Colbert*, however, is a social security case, and did not assess the physical injury requirement of § 1997e(e) or the resulting physical symptoms that Plaster alleges from her anxiety and depression. Thus, *Colbert* does not support the MDOC Defendants' position.

Under § 1997e(e), "while the requisite physical injury need not be significant, it must be more than de minimis." *See, e.g., Braswell v. Corr. Corp. of*

*Am.*, 419 F. App'x 622, 626-27 (6th Cir. 2011). In *Zamboroski v. Karr*, No. 04-73194, 2007 WL 541921, at *5 (E.D. Mich. Feb. 16, 2007), the court found that allegations of pain, rashes and scarring of the arms, and deprivation of exercise caused by restraints were more than de minimis under § 1997e(e). And as Plaster cites, the court in *Cheatham v. Haye*, No. 2:19-CV-10480, 2020 WL 3481645, at *2 (E.D. Mich. June 26, 2020) found that weight loss alone can state a more than *de minimis* injury, noting that other cases have found the same. MDOC Defendants argue that these physical injuries may be side effects of Plaster's hormone therapy. However, at this stage, Plaster's allegations that they result from the denial of surgical intervention for her gender dysphoria are taken as true. Further, the hormone therapy is allegedly required as an alternative to surgical intervention, thus establishing a causal link between the defendants' actions and Plaster's injuries.

MDOC Defendants also argue that the Court should not consider Plaster's risk and history of blood clots as a physical injury here, because her blood clot history predates their involvement and her claim is therefore barred by the statute of limitations. However, as Plaster correctly notes, the risk of blood clots is an ongoing issue allegedly attributable to hormone therapy, which is required for her treatment in the absence of surgical intervention. Therefore, the undersigned finds that the physical injury requirement of § 1997e(e) is satisfied.

Furthermore, the undersigned agrees with Plaster that in the absence of a physical injury, she is only precluded from recovery for compensatory damages for mental or emotional injury. In *Cheatham*, the court noted that under the reasoning from other Circuit Courts, the plaintiff could still proceed for injunctive or declaratory relief in the absence of a physical injury. 2020 WL 3481645, at *3 (citing *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *Davis v. D.C.*, 158 F.3d 1342, 1346 (D.C. Cir. 1998); *Zehner v. Trigg*, 133 F.3d 459, 461-62 (7th Cir. 1997)). Although the *Cheatham* court noted that the Sixth Circuit had not squarely addressed the issue, on the same day as the *Cheatham* opinion, the Sixth Circuit released *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020), where it reversed and remanded a district court screening opinion dismissing the plaintiff's case in part based on the physical injury requirement of § 1997e(e). Over a strong dissent, the Sixth Circuit found that,

> At the very least, Small may continue to pursue his action based on the requests for non-compensatory relief. There is widespread agreement among our sister circuits that § 1997e(e) allows prisoners alleging non-physical injury to still pursue claims for nominal damages, as well as injunctive and declaratory relief. *See generally Aref v. Lynch*, 833 F.3d 242, 262–67 & n.15 (D.C. Cir. 2016) (describing the precedential landscape in detail). Most of our sister circuits also interpret the statute to allow claims for punitive damages. *See id.* at 266. And we recently recognized that § 1997e(e) "does not bar claims for constitutional injury that do not also involve physical injury." *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015). Thus, in so far as Small seeks forms of relief other than compensatory damages, his case may proceed. *See Lucas v.*

> *Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (suggesting that § 1997e(e) allows prisoners to seek nominal and punitive damages, as well as injunctive relief, for alleged Eighth Amendment violations).
>
> There is also a strong argument that § 1997e(e) allows Small to seek compensatory damages for his alleged *constitutional* injury. As we observed in *King*, the statute "says nothing about claims brought to redress constitutional injuries, which are distinct from mental and emotional injuries." 788 F.3d at 213. We thus allowed the prisoner in *King* to receive compensatory damages for "injuries to [his] First Amendment rights." *Id.* at 212. The same logic would seem to apply here. *See, e.g.*, *Lucas*, 785 F. App'x at 292 (applying *King*'s logic to suggest that compensatory damages are available for Eighth Amendment violations). In the absence of adversarial briefing, however, we decline to resolve whether this holding of *King* extends to compensatory damages for alleged Eighth Amendment violations. It is sufficient at this stage of the litigation to remand the case based on Small's other requested forms of relief and allow the district court to address this narrower issue in the first instance.

*Small*, 963 F.3d at 543-44.

Later, in an unpublished opinion, the Sixth Circuit cited *Small* in characterizing § 1997e(e) as "a limit on damages that a prisoner can seek, not a pleading requirement." *Westley v. Harris*, No. 23-3177, 2024 WL 4111143, at *3 (6th Cir. Sept. 4, 2024). "Even in the absence of physical injury, a prisoner may be able to pursue claims for nominal and punitive damages and injunctive and declaratory relief." *Id.* One case in this Circuit involving a transgender prisoner plaintiff with gender dysphoria has already avoided dismissal of a claim of sexual harassment based on these precedents from *Westley* and *Small*. *See Stanfill v.*

*Unknown Morford*, No. 1:24-cv-148, 2025 U.S. Dist. LEXIS 229529, at *4-5 (W.D. Mich. Oct. 31, 2025).

MDOC Defendants urge the Court to disregard the Sixth Circuit's opinion in *Small* because as an appeal from a screening opinion, "there was no briefing to argue against the Court's ultimately flawed analysis" which "contravenes that plain language of the PLRA at 42 U.S.C. § 1997e(e)." (ECF No. 39, PageID.438). However, the undersigned recommends following *Small*, a published Sixth Circuit opinion, as well as *Westley* and the reasoning from *Cheatham* and the Second, Fifth, Seventh, and D.C. Circuits in finding that even if Plaster had not alleged a physical injury (which she has), she could proceed on claims for nominal and punitive damages and injunctive and declaratory relief.

b. Personal Involvement

MDOC Defendants also argue that Plaster has impermissibly ascribed collective acts to Blessman, Carey, Dawdy, and Leon, as "GRC Defendants," rather than stating a plausible claim against each defendant. "[A] Plaintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012). "[A] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the

grounds for the claims made against a particular defendant." *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1140 (W.D. Mich. 2019), *aff'd,* 831 F. App'x 161 (6th Cir. 2020) (quoting *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012)).

Defendants note that Leon, Carey, Blessman, and Dawdy are not named in the complaint other than being listed as parties who are members of the GRC. Nevertheless, Plaster has pled allegations against them that do state individual plausible claims. This is because, as she explains in response, she has pled that despite Clark's name being the only name listed on her denials, the decisions to deny surgical intervention were made by the GRC as a whole, and each member has allegedly voted or decided against allowing Plaster to get her requested surgeries. (ECF No. 38, PageID.370). Plaster has further alleged that the GRC decides unanimously, meaning that each GRC Defendant has acted to deprive Plaster's constitutional rights. (*Id.*, PageID.371). Taking these allegations as true, as the court must at this stage, GRC Defendants may not "avoid liability for their individual involvement" by "fail[ing] to put their names on any documents available to Plaster." (*Id.*).

As for Sherry, MDOC Defendants say that she is not an alleged member of the GRC and Plaster has failed to plead her personal involvement. This is undercut by MDOC Defendants' own motion. They cite the portions of the complaint

referring to Sherry's customs and diagnostic criteria that are allegedly to blame for Plaster's surgery denials. (ECF No. 1, PageID.5-6). Plaster specifically states that Sherry, as Director of BHCS, purposely diagnoses transgender prisoners with "Gender Dysphoria, Unspecified" to prevent them from receiving surgical intervention as none would ever "fit the criteria" for surgery. (*Id.*, PageID.5). MDOC Defendants dispute this because Washington, not Sherry, is MDOC's policy maker. But Sherry's role as alleged is clear; whether Plaster is correct about that role is not currently before the Court. Therefore, the undersigned does not recommend dismissing any defendant for lack of alleged personal involvement.

3. Fourteenth Amendment

MDOC Defendants argue that Plaster failed to state a Fourteenth Amendment claim against Chapman, Cargor, and Jarrett for denying her request for a search accommodation because she has not alleged disparate treatment compared to other similarly situated prisoners.

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, which is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaster must plead that "the government treated [her] disparately as compared to similarly situated persons and that such disparate

treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

In her complaint, she alleges that her and other transgender prisoners with CSC convictions have been denied search accommodation, whereas transgender prisoners convicted of other violent offenses were not denied. (ECF No. 1, PageID.14). She reiterates this position in her response and has attached evidence of another transgender prisoner with a CSC conviction who was not approved for the search accommodation and a transgender prisoner with a murder conviction who *was* approved for the accommodation. (ECF No. 38, PageID.375, 412, 414-415).

"Because the Equal Protection Clause seeks to ensure that similarly situated people are treated alike, an equal protection plaintiff must be similarly situated to [her] comparators 'in all relevant respects.'" *Murphy v. Clendenion*, No. 1:23-CV-00013, 2023 WL 3065216, at *2 (M.D. Tenn. Apr. 24, 2023) (citing *City of Cleburne*, 473 U.S. at 439; *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Here, it appears that there are two possible equal protection theories that may apply to Plaster. One is that *transgender* prisoners with CSC convictions are treated differently from cisgender prisoners with CSC convictions. That is not how Plaster has pled or supported her

claim, nor has it been addressed by MDOC Defendants. The other theory is that transgender prisoners with CSC convictions are treated differently from transgender prisoners with other kinds of criminal or troublesome history. This is what Plaster appears to plead.

Under either theory, MDOC Defendants need only show that there is a rational basis for the disparate treatment. Having a CSC conviction does not constitute membership in a suspect class, nor does being a transgender prisoner. *See United States v. Skrmetti*, 605 U.S. 495, 522 (2025) (rational basis review applies to equal protection claims by individuals who identify as transgender or who have been diagnosed with gender dysphoria). While the undersigned is skeptical of the claim that denying search accommodations for inmates with CSC convictions would not pass rational basis review, MDOC Defendants offer very little in defense of rational basis, stating for the first time in their reply that

> Defendants Jarrett and Cargor conducted an individualized review of Plaintiff's request and determined that Plaintiff's request for a search accommodation should be denied. Prison officials must be afforded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 521 (1979); *Turner v. Safley*, 482 U.S. 78, 90 (1987).

(ECF No. 39, PageID.439).

As such, defendants have not shown at this time that there is a rational basis for the alleged denial of a search accommodations based on a CSC conviction

without individualized review. As such, MDOC Defendants' motion to dismiss this claim should be denied.

4. Fourth Amendment

Plaster claims that Owens violated her right to bodily privacy and bodily integrity by authorizing an "unreasonable search" in violation of the Fourth Amendment. (ECF No. 1, PageID.14-15). In the prison context, the Supreme Court has recognized that prisoners have an extremely limited expectation of privacy under the Fourth Amendment. *See Hudson v. Palmer*, 468 U.S. 517, 524-28 (1984). To determine the reasonableness of a search of a prisoner under the Fourth Amendment, the Court should conduct "a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

Plaster alleges that she was strip searched on April 24, 2024, after returning from an off-site medical appointment. (*Id.*, PageID.15). MDOC Defendants say that this is pursuant to MDOC policy. (ECF No. 33, PageID.321 (citing ECF No. 33-3)). Plaster takes no issue with the fact that a strip search was conducted, but with the manner in which it was conducted. She requested that Owens allow a

female officer to conduct the search and says that Owens denied this request with a smirk. (ECF No. 1, PageID.15).

The Sixth Circuit has recognized that strip searches of prisoners in front of other inmates or officers of a different gender can implicate the Fourth Amendment. *See Everson v. Michigan Dep't of Corr.*, 391 F.3d 737, 739 (6th Cir. 2004); *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992); *Kent v. Johnson*, 821 F.2d 1220, 1226-27 (6th Cir. 1987). However, the Sixth Circuit has also found a claim that a male prisoner "was strip-searched in front of a female officer and humiliated by her laughing at him while he was naked" did not implicate the Fourth Amendment because the defendants "carried their burden of establishing actions by defendant Callis which were reasonable under the circumstances and were reasonably related to the legitimate penological interest of security and order." *Roden v. Sowders*, 84 F. App'x 611, 612 (6th Cir. 2003).

While the right to be searched by an officer of the same sex is arguably recognized in the Sixth Circuit, as one court has recognized, "the federal courts have not yet concluded whether those rights encompass [a transgender prisoner's] asserted interest in being strip searched by a member of the sex with which [they] identif[y]." *Nation v. White*, No. 5:20-CV-P104-BJB, 2021 WL 768132, at *4 (W.D. Ky. Feb. 26, 2021); *see also Hart v. Dep't of Corr.*, No. 4:24-CV-P34-JHM, 2024 WL 2249913, at *4 (W.D. Ky. May 17, 2024) ("The federal courts have not

yet concluded whether the right to bodily privacy encompasses a prisoner's asserted interest in being strip-searched by a member of the sex with which the prisoner identifies.").

In *Nation*, the court was screening the complaint and allowed the transgender plaintiff to proceed on the claim that she was searched by a male officer against her wishes. In *Hart*, the plaintiff's claim was dismissed because she did not name the defendants who searched her, but she was granted leave to file an amended complaint naming those officers and suing them in their individual capacities.

Here, the proper course of action based on the authorities cited above is to allow Plaster's claim to proceed. However, as will be discussed below, Owens has argued that he is entitled to qualified immunity on this claim because it is not "clearly established" that a prisoner should not be searched by an officer of the opposite gender from that with which the prisoner identifies. Owens is correct on this point and is entitled to qualified immunity in his individual capacity for this claim.

### 5. Qualified Immunity

#### 1. Standard

Qualified immunity "is not just a defense, but an immunity to suit for money damages." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It shields government

officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). By doing so, it gives officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified). After a defending official initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d at 472.

In considering qualified immunity, the Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Id.* The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

2. Analysis

MDOC Defendants say they are entitled to qualified immunity because, even if the Court finds that there have been constitutional violations, they did not violate any rights which have been clearly established in the Sixth Circuit.

In determining whether a right has been clearly established, courts "'must look first to decisions of the Supreme Court, then to decisions of [their circuit court] and other courts within our circuit, and finally to decisions of other circuits.'" *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (quoting *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006)). Cases that are nonbinding (e.g., district court decisions, decisions of other circuits) may be used as persuasive, but not mandatory, authority. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

As noted above, Owens is entitled to qualified immunity against money damages for his conduct allegedly in violation of the Fourth Amendment because federal case law is not clear on the right of a transgender prisoner to be searched by an officer of the same gender with which the plaintiff identifies.

As for Plaster's ADA and RA claims, the undersigned has recommended their dismissal but in the event this recommendation is not adopted, MDOC Defendants would be entitled to qualified immunity due to the lack of binding precedent.

Regarding Plaster's Eighth Amendment claim against multiple defendants for denial of gender reassignment and other surgeries, the undersigned views this right as clearly established. As noted in *Fisher*, the Sixth Circuit has long recognized that gender dysphoria is a serious medical condition and a refusal to provide treatment would state an Eighth Amendment claim. *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401 (6th Cir. 1997). The overwhelming majority of other Circuit Courts to consider the issue have gone farther, opining that a blanket ban on surgical treatment states an Eighth Amendment claim. *See Kosilek*, 774 F.3d 63; *Fields*, 653 F.3d 550; *Rosati*, 791 F.3d 1037; *Keohane*, 952 F.3d 1257; *but see Gibson*, 920 F.3d 212.

"There need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional." *Goodwin v. City of Painesville*, 781 F.3d 314, 325 (6th Cir. 2015) (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)) (citation modified). The relevant question here, at the appropriate level of generality, is whether defendants may deny a particular treatment for a recognized serious medical condition without regard to a plaintiff's specific need for the treatment. This right is clearly established, and qualified immunity should be denied on Plaster's Eighth Amendment claims. Furthermore, Plaster's ability to proceed on these claims for nominal and punitive damages and

injunctive and declaratory relief is also clearly established. *See Small v. Brock*, 963 F.3d 539; *Westley v. Harris*, 2024 WL 4111143.

Lastly, Plaster's right to equal protection under the Fourteenth Amendment is clearly established, and defendants do not argue otherwise. Simply put, Plaster has pled a viable and recognized claim that "the government treated [her] disparately as compared to similarly situated persons and that such disparate treatment . . . ha[d] no rational basis." *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379.

6. State Law Claims

MDOC Defendants argue that even if the Court finds Plaster's federal claims to have merit at this stage, she has "effectively abandoned [her] state-law claims." (ECF No. 33, PageID.328). They are correct that Plaster "mentions several state-law claims in her introduction paragraph but only has one vague reference to 'Michigan law' in the body of her complaint." (*Id.*). Thus, they say, she has "failed to provide a 'short and plain statement of the claim showing that [she] is entitled to relief' as required under Fed. R. Civ. P. 8(a)(2)." (*Id.*).

Plaster urges the Court not to dismiss her three state law claims, which are for cruel and unusual punishment under Article 1, Section 16 of the Michigan Constitution; abuse of mental health recipients under M.C.L. 330.1722; and discrimination under the Elliot-Larsen Civil Rights Act, M.C.L. 37.2102.

Alternatively, she requests leave to amend her complaint to "remedy any confusion regarding her state claims." (ECF No. 38, PageID.382). MDOC Defendants do not address these requests in their reply.

The undersigned recommends that Plaster's state-law claims be dismissed without prejudice, because they are not sufficiently stated in the complaint or proposed amended complaint for the reasons noted by MDOC Defendants. There is insufficient briefing on the issue of whether Plaster can state a claim under any of her state-law theories based on the allegations before the Court.

V. Plaster's Motion for Leave to Amend the Complaint

Also pending before the Court is Plaster's motion for leave to amend the complaint (ECF No. 25) and her proposed amended complaint itself (ECF No. 26). Plaster seeks to amend the complaint because she obtained "information that was previously unavailable" regarding the voting requirements of the GRC and also to add a failure to protect claim against the GRC Defendants "for their decision to knowingly subject [her] to conditions detrimental to her health and safety." (ECF No. 38, PageID.382). MDOC Defendants have responded in opposition to Plaster's motion. (ECF No. 31).

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Rule 15(a)(1) allows a party to amend its pleading once, as a matter of course, but only within 21 days of service of a

responsive pleading or Rule 12(b), (e), or (f) motion. Rule 15(a)(2) allows that other amendments may be made with the court's leave, which the court should give freely when justice so requires. The Supreme Court has instructed:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). Rule 15(a) creates a liberal policy in favor of granting leave to amend and is meant to "reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

MDOC Defendants argue that allowing Plaster to amend the complaint would be futile, because the amended complaint fails to state any claim against them or the Wellpath Defendants. For the reasons discussed above, this is true as to some but not all of Plaster's claims. Her clarified claims and allegations do not cause any of the above analyses to change. But her added claim of failure to protect under the Eighth Amendment must be assessed for futility.

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "Although prison officials have a duty under [the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners, it is

equally clear that not every injury suffered by one prisoner at the hands of another…translates into constitutional liability for prison officials." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994)). To prove a failure to protect claim, "the plaintiff must show that: 1) objectively, [she] was incarcerated under conditions posing a substantial risk of harm, and 2) the official acted with deliberate indifference to inmate safety, meaning the official was subjectively aware of the risk and failed to take reasonable measures to abate it." *Id.* (quoting *Farmer*, 511 U.S. at 829, 834, 847). A prisoner does not need to allege that they have been the victim of an attack to sustain a failure to protect claim, but they must show that they reasonably fear such an attack. *Cristini v. Loman*, No. 2:25-CV-10, 2025 WL 900545, at *4 (W.D. Mich. Mar. 25, 2025) (citing *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242-43 (6th Cir. 1994)).

Alleging failure to protect, Plaster has added the following paragraph to the complaint:

> Upon information and belief, as well as conversations with PA Couturier, each of [the GRC Defendants] were notified of Plaster's history of suicidal thoughts and attempts, and were aware of her desire to die rather than continue living in the wrong body. Not one of these Defendants considered these factors when voting to deny the only relief likely to save Plaster's life. Each of these individuals authorized, approved, or knowingly acquiesced in conduct in violation of the Eighth Amendment.

(ECF No. 26, PageID.225).

In response, MDOC Defendants argue that Plaster cannot sustain a failure to protect claim because she has not suffered any physical harm and has "not alleged facts to show that Defendants are aware of any current risk to Plaintiff due to her alleged past suicidal ideations where she is [on] a treatment plan for her gender dysphoria." (ECF No. 31, PageID.276).

In *Finley v. Huss*, 102 F.4th 789, 804 (6th Cir. 2024), the Sixth Circuit assessed a plaintiff's claim that his lengthy placement in administrative segregation was deliberately indifferent to the substantial risks that solitary confinement posed to his mental health. The court noted that this claim "could proceed under two theories: (1) indifference to unsafe conditions of confinement, and (2) indifference to a serious medical need." *Id.* at 804 n.2. There, the plaintiff focused on the conditions of confinement framework and the discussion of serious medical needs was "subsume[d]" therein. *Id.* The court followed the plaintiff's lead, but noted that "the distinction doesn't ultimately matter." *Id.* "Whether an inmate characterizes his purportedly unlawful treatment 'as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both,' the same two-pronged deliberate-indifference inquiry applies." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

The same is true here. Whether Plaster's alleged denial of medical treatment is viewed as deliberate indifference to serious medical needs or a failure to protect,

the same Eighth Amendment analysis applies. There is no need to render either of the claims dismissed, but they are in fact the same claim. Thus, the undersigned does not recommend dismissing Plaster's "failure to protect" claim as it coexists with her deliberate indifference claim.

## VI. In Sum

The undersigned recommends that some of the claims from the original complaint be dismissed while others survive. Specifically, if the recommendations are adopted, Plaster's ADA and RA claims would be dismissed; her Eighth and Fourteenth Amendment claims would survive; her Fourth Amendment claim against Owens would survive, but Owens would be entitled to qualified immunity in his individual capacity; and Plaster's state-law claims would be dismissed without prejudice.

Furthermore, the undersigned recommends that Plaster's motion for leave to amend the complaint be granted in part, such that the proposed amended complaint (ECF No. 26) becomes the operative complaint, but the claims discussed above remain dismissed. Therefore, the remaining claims under the amended complaint would be:

- Violations of the Eighth Amendment against Sherry, Clerk, McIntyre, Carey, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Ali for withholding surgical intervention,
- Violation of the Fourth Amendment right to privacy and bodily integrity against Owens in his official capacity only, and

- Violation of the Fourteenth Amendment against Cargor and Jarrett for denial of the search accommodation based on Plaster's CSC conviction.

## VII. Conclusion

For the reasons discussed above, the undersigned RECOMMENDS that Wellpath Defendants' motions to dismiss (ECF Nos. 12, 18) be DENIED; that Plaster's motion for leave to amend (ECF No. 25) be GRANTED IN PART and DENIED IN PART; and that MDOC Defendants' motion to dismiss (ECF No. 33) be GRANTED IN PART and DENIED IN PART. If this recommendation is adopted, Washington and Chapman would be dismissed from the case, and the remaining claims would be as outlined above.

Dated: June 9, 2026
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 9, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager