**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SHAYLA[1] PLASTER,

Plaintiff,

v.

HEIDI WASHINGTON, et al.,

Defendant.
________________________________/

Case No. 25-cv-12045
Hon. Jonathan J.C. Grey
Magistrate Judge Kimberly G. Altman

**ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION (ECF No. 40)**

Plaintiff Shayla Plaster is an inmate with gender dysphoria at the Thumb Correctional Facility. In her suit, she alleges that the defendants denied her needed health care (gender-affirming surgery) and search accommodations. This matter is before the Court on several motions to dismiss, Plaster's motion for leave to amend her complaint (ECF No. 25), and Plaster's motion for appointment of counsel (ECF No. 52).

Three groups of defendants moved to dismiss Plaster's complaint: (1) Raziuddin Ali, E'Coe Hill, Fadi Ibrahim, and Rosilyn Jindal

[1] Plaster identifies as a transgender woman, refers to herself as "Shayla," and refers to herself using female pronouns. The Court follows suit.

("Wellpath Defendants") (ECF No. 12); (2) Hill and Jindal for claims arising after May 1, 2024 (ECF No. 18); and (3) James Blessman, Theadia Carey, Kim Cargor, Amy Clark, David Dawdy, Jimmy Jarrett, Carmen McIntyre, Jordon Owens, Marti Kay Sherry, and Heidi Washington ("MDOC Defendants") (ECF No. 33). Each motion to dismiss was fully briefed. (Wellpath Defendants in ECF Nos. 12, 27, 30; Hill and Jindal in ECF Nos. 18, 27; and MDOC Defendants in ECF Nos. 33, 38, and 39.)

On June 9, 2026, Magistrate Judge Kimberly G. Altman issued a Report and Recommendation (the "R&R") (ECF No. 40) in which she recommends that the Court: (1) deny Hill and Jindal's motion to dismiss (ECF No. 12); (2), deny Wellpath Defendants' motion to dismiss (ECF No. 18); (3) grant in part and deny in part MDOC Defendants' motion to dismiss (ECF No. 33); and (4) grant in part and deny in part Plaster's motion for leave to amend the complaint (ECF No. 25). All parties filed objections to the R&R. (Wellpath Defendants in ECF No. 42; Hill and Jindal in ECF No. 41; Plaster in ECF No. 44; and MDOC Defendants in ECF No. 45.)

For the reasons stated below, the Court **ADOPTS IN PART AND REJECTS IN PART** Magistrate Judge Altman's R&R (ECF No. 40). The

Court **DENIES** the motions to dismiss of Wellpath Defendants, Hill, and Jindal (ECF Nos. 12, 18), **GRANTS IN PART AND DENIES IN PART** MDOC Defendants' motion to dismiss (ECF No. 33), **GRANTS IN PART AND DENIES IN PART** Plaster's motion for leave to amend the complaint (ECF No. 25), and **GRANTS** Plaster's motion for appointment of counsel (ECF No. 52).

## I. LEGAL STANDARD

The Court reviews de novo any portion of the R&R to which a specific objection has been made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011). A party's failure to file objections to certain conclusions of the R&R waives any further right to appeal on those issues. *See Smith v. Detroit Fed'n of Teachers Local*, 829 F.2d 1370, 1373–74 (6th Cir.1987).

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). When assessing a motion to dismiss under Rule 12(b)(6), the Court must give the plaintiff the benefit of the doubt and must accept all the complaint's factual allegations as

true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Additionally, the Court liberally construes a pro se civil rights complaint. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

But the Court will not presume the truth of any legal conclusions stated in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the pleaded facts do not raise a right to relief, the Court must grant the motion to dismiss. *Winnett v. Caterpillar*, *Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## II. ANALYSIS

### A. Plaster's Objections

Plaster argues that the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims against MDOC Director Washington should not be dismissed because physical impairment caused her gender dysphoria. The R&R thoroughly outlines the ADA's exclusion of certain gender identity disorders, finding that most federal courts have concluded that gender identity disorders that do not result from physical impairment are excluded from the ADA's protection. (ECF No. 40, PageID.458–61 (citations omitted).) The Court agrees with this analysis.

Since Plaster does not allege in her pleadings that her gender dysphoria was caused by physical impairment or that gender dysphoria always results from a physical impairment, she failed to state a plausible ADA claim. The same analysis applies to Plaster's RA claims because the RA contains the same language as the ADA regarding gender identity disorders. 29 U.S.C. § 705(20)(F).

Plaster also argues that the R&R should not have dismissed her ADA and RA claims against Director of Bureau of Health Care Services Sherry as redundant of her ADA claim against Washington. (ECF No. 44, PageID.514.) Because the ADA and RA claims are not viable due to failure to allege physical impairment, the ADA and RA claims against Sherry also fail, regardless of redundancy.

Accordingly, Plaster's objections are **OVERRULED**, and Washington and Sherry are **DISMISSED** from this matter.

**B. MDOC Defendants' Objections**

**1. Defendant Owens**

In MDOC Defendants' first objection, Defendant Owens objects to the R&R's finding that Plaster has a Fourth Amendment claim against

Owens in his official capacity because the complaint only sues him in his individual capacity. (ECF No. 45, PageID.529.)

The Court agrees that Plaster only sues Owens in his individual capacity (ECF No. 1 at ¶ 17; ECF No. 26 at ¶ 17) for declaratory relief and money damages. (ECF No. 1 at ¶¶ (A)(iv), (E); ECF No. 26 at ¶¶ (A)(v), (E).) The R&R analyzed the individual capacity claim against Owens but did not mention the official capacity claim against him until its conclusion. (ECF No. 40, PageID.473, 482.)

Because Plaster clearly identifies each defendant in her complaint and differentiates the capacity in which she is suing them (ECF No. 1 at ¶¶ 3–17; ECF No. 26 at ¶¶ 3–17), including Owens, the Court cannot construe an official capacity claim against Owens.

Accordingly, MDOC Defendants' objection as to the viability of an official capacity claim against Owens is **SUSTAINED**, and Owens is **DISMISSED** from this matter.

### 2. Defendants Blessman, Carey, Clark, Dawdy, McIntyre, and Sherry

In MDOC Defendants' second objection, defendants Blessman, Carey, Clark, Dawdy, McIntyre, and Sherry assert that the R&R erred in concluding that they are not entitled to qualified immunity on Plaster's

Eighth Amendment claim. (ECF No. 45, PageID.532.) They contend that there is no clearly established right in the Sixth Circuit to gender-affirming surgery for inmates who are receiving alternative treatment. (*Id.* at 533 (citing *Fisher v. Fed. Bureau of Prisons*, 484 F. Supp. 3d 521, 541 (N.D. Ohio 2020).) The Court agrees.

When defendants raise a qualified immunity defense in a § 1983 suit, plaintiffs must prove two elements. *Crawford v. Tilley*, 15 F.4th 752, 762–63 (6th Cir. 2021). A plaintiff must establish that (1) the defendants' actions violated one of the plaintiff's constitutional rights, and (2) that right was clearly established at the time the defendants acted. *D.C. v. Wesby*, 583 U.S. 48, 62 (2018) (citation omitted). This two-step inquiry may be examined in either order, however, if both questions are not answered in the affirmative, qualified immunity will shield the defendant from civil liability. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court begins with the "clearly established" prong. A right is "clearly established" when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The primary inquiry is

whether government officials are on notice their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730 (2002). To determine if a right is clearly established, courts may "look to binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits." *Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 515 (6th Cir. 2017) (citations omitted). Existing precedent must place the question beyond debate; however, a case directly on point is not required to clearly establish a right. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) (citations omitted). Broad propositions of law will generally not be enough. *Id.* (citing *Brosseau v. Haugen*, 453 U.S. 194, 199 (2004)).

Here, there is no dispute that Plaster needs and receives hormone therapy for her gender dysphoria. (ECF No. 1 at ¶ 23; ECF No. 12, PageID.151; ECF No. 18, PageID.182; ECF No. 33, PageID.318.) The R&R frames the relevant right as follows: the right to particular treatment based on the individual's specific needs for a recognized serious medical condition. (ECF No. 40, PageID.476.) This defines the right at too high a level of generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). A general right to medical

care "'will often not clearly establish' that a defendant unreasonably responded to a serious medical need in a specific case." *Pearson v. Michigan Dep't of Corr.*, 170 F.4th 1027, 1040 (6th Cir. 2026) (finding that a "right to medical care that was not unreasonably delayed" was framed too generally).

Unfortunately for Plaster, no Sixth Circuit or Supreme Court case exists that put MDOC Defendants on notice that their decision to treat Plaster's gender dysphoria with hormone therapy rather than gender-affirming surgery was unconstitutional. The R&R first points to *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401 (6th Cir. 1997), as persuasive authority. *Murray* involved a prison that treated a transgender inmate with a lower dosage of hormones than she had received before her confinement. *Id.* In recognizing that transgender individuals have a serious medical need, *Murray* held that a prison's refusal to provide a transgender inmate with any treatment would state an Eighth Amendment claim. *Id.* The Sixth Circuit concluded that the plaintiff failed to state a claim because she received treatment and the court was reluctant to second-guess medical judgments. *Id.* Although *Murray* clearly establishes Plaster's right to medical treatment for her gender

dysphoria, it does not clearly establish her right to receive one form of medical treatment over another, even if the denial of her preferred treatment were pursuant to a de facto ban. *See id.*

Looking to other circuits, the unconstitutionality of MDOC Defendants' medical decision is not "beyond debate" at this time. The R&R relies on four out-of-circuit decisions in its finding of a "clearly established" right. (ECF No. 40, PageID.455.) However, as the R&R also noted, circuit courts are split over the constitutionality of prison blanket denials of gender-affirming surgery:

> In *Fisher*, the court noted that the majority of circuits found a blanket policy or de facto ban to deny surgery without consideration of an inmate's particular medical needs to potentially violate the Eighth Amendment. *Id.* at 543 (citing *Kosilek v. Spencer*, 774 F.3d 63, 91 (1st Cir. 2014), *Fields v. Smith*, 653 F.3d 550, 552 (7th Cir. 2011), *Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015), *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020)); *but see Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019) (finding that "sex reassignment surgery remains an issue of deep division among medical experts" and there is therefore no basis "to hold a state official deliberately (and constitutionally) indifferent, for doing nothing more than refusing to provide medical treatment whose necessity and efficacy is hotly debated within the medical community.").

(ECF No. 40, PageID.455.) Additionally, out-of-circuit decisions are "usually irrelevant" to the "clearly established" inquiry with the limited

exception of extraordinary cases where the out-of-circuit decisions "both point unmistakably to [a holding and are] so clearly foreshadowed by applicable direct authority as to leave no doubt regarding that holding. *Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020) (citations omitted). This exception is inapplicable in light of the Fifth Circuit's rejection of an Eighth Amendment claim in this context. *Gibson*, 920 F.3d 212. Finally, to the extent the R&R relies on *Fisher*, a Western District of Michigan decision, a single district court opinion is not enough to pronounce a right is clearly established. *Hall v. Sweet*, 666 F. App'x 469, 481 (6th Cir. 2016).

The Court acknowledges that Plaster plausibly alleged that MDOC Defendants denied her surgery pursuant to a de facto ban in violation of the Eighth Amendment. *See infra* Section II.C.4. But since there is currently insufficient caselaw to support a "clearly established" right to a particular medical treatment, defendants Blessman, Carey, Clark, Dawdy, McIntyre, and Sherry are entitled to qualified immunity, their objection is **SUSTAINED**, and they are **DISMISSED** from this matter.

### 3. Defendants Cargor and Jarrett

Defendants Cargor and Jarrett[2] object to the R&R's finding that they are not entitled to qualified immunity on Plaster's Fourteenth Amendment claim against them for denial of a search accommodation. (ECF No. 45, PageID.535.)

In her complaint, Plaster alleges that she and other transgender prisoners with criminal sex conduct convictions have been denied search accommodations that transgender prisoners convicted of other violent offenses have not been. (ECF No. 1, PageID.14.) Plaster has thus plausibly pleaded that she has been treated differently from other transgender inmates. The R&R aptly noted that MDOC Defendants "need only show that there is a rational basis for the disparate treatment" that Plaster alleges. (ECF No. 40, PageID.470.)

In their motion to dismiss, Jarrett and Cargor do not present any rational basis arguments and baldly state that Plaster failed to allege disparate treatment. (ECF No. 33, PageID.319.) In their reply brief to Plaster's response, Jarrett and Cargor offer two sentences to justify

---

[2] As the R&R found, Plaster names "Chapman" as a defendant in her original complaint but not the amended one for the same conduct as Cargor and Jarrett. Because the Court grants Plaster's motion to amend for the reasons in the R&R, it follows that Chapman is dismissed from this matter.

MDOC's denial of Plaster's requested search accommodations: (1) Plaster's request received individualized review (with no details as to what the review entailed or why the review resulted in a denial), and (2) they quote a case that held that prison officials must be afforded deference to preserve security. (ECF No. 39, PageID.439.) Neither of those sentences alleged that granting Plaster a search accommodation would pose a security issue.

In MDOC Defendants' third objection to the R&R, MDOC Defendants for the first time provide a rationale for the denial of Plaster's search accommodation. There, they explain that Plaster's request to be searched by female staff was denied because Plaster has a criminal sex conduct conviction against one female and MDOC has a goal of maintaining safety. (ECF No. 45, PageID.536.) However, parties cannot "raise at the district court stage new arguments or issues that were not presented" before the magistrate judge's R&R was issued. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[W]hile the Magistrate Judge Act . . . permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not

presented to the magistrate."). Magistrate Judge Altman never had the opportunity to consider MDOC's rationale and appropriately could not find rational basis in the scant argument before her. Therefore, MDOC Defendants' failure to raise this argument for rational basis before the magistrate judge constitutes a waiver of that argument, and MDOC Defendants' objection regarding qualified immunity for Cargor and Jarrett is **OVERRULED**. Chapman is **DISMISSED** from this matter.

### C. Wellpath Defendants' Objections

#### 1. Individualized Involvement

Wellpath Defendants first argue that the R&R erred by ascribing the collective acts of defendants to each individual defendant. (ECF No. 41, PageID.486.) They contend that Plaster does not allege that there was a unanimous vote of the Gender Review Committee ("GRC") to deny Plaster gender-affirming surgery and that a unanimous vote would still not render it an individual decision. (*Id.* at PageID.488.) This argument is unavailing because Plaster sufficiently ascribed independent violative conduct to each of the Wellpath Defendants, and at this stage, the Court must accept Plaster's factual allegations as true. *Keys*, 684 F.3d at 608.

Plaster alleges that, among others, Ibrahim, Hill, Jindal, and Ali are members of the GRC. (ECF No. 1 at ¶¶ 5–14; ECF No. 26 at ¶¶ 5–14.) On February 7, 2023, GRC members asserted that Plaster "does not meet the criteria for surgical intervention" pursuant to Sherry's criteria for such surgeries. (ECF No. 1 at ¶ 27; ECF No. 26 at ¶ 27.) On May 24, 2023, a physician's assistant informed Plaster that the GRC had not approved any surgeries. (ECF No. 1 at ¶ 29; ECF No. 26 at ¶ 29.) On February 18, 2025, a physician's assistant notified Plaster that "surgery was not approved at this time." (ECF No. 26 at ¶ 1; ECF No. 26 at ¶ 36.) On February 23, 2024, Plaster sent letters to the GRC requesting gender-affirming surgery and received no response from any GRC member. (ECF No. 1 at ¶ 31; ECF No. 26 at ¶ 31.) On February 26, 2025, Plaster received the following response to her written inquiry regarding what the criteria for gender-affirming surgery is: "I do not know the answer to your question. The GRC is aware of your request." (ECF No. 1 at ¶ 37; ECF No. 1, PageID.62; ECF No. 26 at ¶ 37.)

In her amended complaint, Plaster further alleges that the GRC "acts as a collective entity based on the voting power of each individual member" and that each GRC member was aware that hormone therapy

"would not suffice for Plaster's level of dysphoria, and knew that prolonged use of hormones resulted in a blood clot in her right leg . . . yet continue voting to deny her requests for surgery." (ECF No. 26 at ¶ 60.)

Moreover, Plaster's allegation that the GRC makes surgery determinations means that each GRC member "may have been involved to some extent in the decision to deny surgery." *Plaster v. Washington*, No. 1:23-CV-591, 2024 WL 1446598, at *7 (W.D. Mich. Feb. 8, 2024), *report and recommendation adopted*, No. 1:23-CV-591, 2024 WL 1229903 (W.D. Mich. Mar. 22, 2024); *see also Snider v. Schmidt*, No. 2:19-CV-134, 2019 WL 4593516, at *3 (W.D. Mich. Sept. 23, 2019) ("It is not clear at this stage what role each of the individual defendants played in deciding whether to approve or deny . . . treatment . . . Thus, if the MDOC's policies were followed, these defendants [on the Gender Dysphoria Collaborative Review Committee] are the ones most likely to have been responsible for the denial of [treatment] or the delay in providing it.").

Taking Plaster's allegations as true that each member of the GRC denied Plaster's request for gender-affirming surgery, the Court finds that Plaster has stated a claim that is plausible on its face. This objection is **OVERRULED**.

### 2. Defendant Capacities

Wellpath Defendants further argue that Plaster appears to allege official capacity claims that should be dismissed because they are duplicative of the claims against MDOC and the Bureau of Healthcare Services. (ECF No. 42, PageID.504.) However, neither of those entities are named defendants. The claims against Wellpath Defendants are thus not duplicative.

Hill and Jindal reiterate that Plaster's claims are akin to official capacity claims and contend that Plaster actually alleges a failed *Monell* custom-of-tolerance claim against the GRC. (ECF No. 41, PageID.488–90; ECF No. 42, PageID.504–06.). Plaster clearly sues the GRC members in their individual capacities as to her Eighth Amendment claim, alleging that their decision to deny certain medical care fell short of constitutional requirements. The complaint identifies Hill and Jindal without their official titles in the caption and states they are being sued in their "individual capacities." (ECF No. 1 at ¶¶ 7–14; ECF No. 26 at ¶¶ 7–14.) Since Hill and Jindal received sufficient notice of the individual capacity suit against them, the Court declines to construe the individual capacity claims as official capacity claims. *See Moore v. City of Harriman*, 272 F.3d

769, 772–73 (6th Cir. 2001) (holding that unless a party is on notice that it is named in an individual capacity, courts will consider it named only in its official capacity)

Accordingly, these objections are **OVERRULED**.

### 3. Four Corners of Complaint

Wellpath Defendants argue that the R&R impermissibly relied on items[3] outside of the complaint and that Plaster never alleges in her amended complaint that GRC decisions are unanimous. (ECF No. 41, PageID.490–92). However, Plaster's amended complaint explicitly states that the GRC is a "collective entity based on the voting power of each individual member." (ECF No. 26 at ¶ 60.) As discussed above, this sufficiently alleges each individual act of the Wellpath Defendants. *See supra* Section II.C.1. This objection is **OVERRULED**.

### 4. Deliberate Indifference

An Eighth Amendment deliberate indifference claim has an objective and subjective prong. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Wellpath Defendants argue that Plaster has not met the

[3] Specifically, they object to the R&R's citation to Plaster's response brief (ECF No. 38) to MDOC Defendants' motion to dismiss where Plaster discussed the defendants' collective acts. (ECF No. 41, PageID.490–92.)

subjective prong because she received medical treatment and merely disagrees with it. (ECF No. 41, PageID.492–94; ECF No. 42, PageID.497–500; ECF No. 45, PageID.529.)

The subjective prong requires a plaintiff to demonstrate "a high standard of culpability, 'equivalent to criminal recklessness.'" *Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 568 (6th Cir. 2020)). To prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk. *Farmer*, 511 U.S. at 837.

Wellpath Defendants are correct that disagreement about the course of treatment does not present a constitutionally cognizable § 1983 claim. *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). However, the Sixth Circuit also recognized that:

> [P]rison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment. Indeed, deliberate indifference may be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment."

*McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (citations omitted).

Here, Plaster alleges more than a medical disagreement about her treatment: she alleges that the GRC has an unwritten policy of denying every request for gender-affirming surgery and denied her surgery pursuant to that ban despite the substantial risk of harm. (ECF No. 1 at ¶¶ 7–14, 22; ECF No. 26 at ¶¶ 7–14, 22.) Plaster's "day-to-day life has been severely limited because all she can think about is gender affirming surgery and how she feels living in the wrong body." (ECF No. 1 at ¶ 33; ECF No. 26 at ¶ 33.) She suffers "significant distress" "as a woman trapped in a man[']s body" and has attempted self-castration and suicide. (ECF No. 1 at ¶¶ 56, 63; ECF No. 26 at ¶¶ 56, 64.) Prolonged hormone therapy caused a blood clot in her right leg. (ECF No. 1 at ¶ 60; ECF No. 26 at ¶ 60.) Medical records appended to the complaint show that on April 19, 2022, a hospital doctor recommended cessation of hormone therapy because a "large clot could be lethal." (ECF No. 1-K, PageID.79.) This upset Plaster, and she told the doctor she would rather be "six feet under" than stop her gender transition (*Id.*) GRC members subsequently denied (or did not respond to) her requests for gender-affirming surgery on

February 7, 2023 (ECF No. 1 at ¶ 27; ECF No. 26 at ¶ 27), May 24, 2023 (ECF No. 1 at ¶ 29; ECF No. 26 at ¶ 29), February 18, 2025 (ECF No. 26 at ¶ 1; ECF No. 26 at ¶ 36), and February 23, 2025 (ECF No. 1 at ¶ 31; ECF No. 26 at ¶ 31). She further alleges that MDOC officials have not granted any inmate's request for gender-affirming surgery. (ECF No. 1 at ¶ 24; ECF No. 26 at ¶ 24.) She names four transgender inmates who were also denied gender-affirming surgeries. (ECF No. 1-A at ¶ 12.)

Hill and Jindal argue that Plaster has not alleged that a physician has stated that gender-affirming surgery is the only treatment. (ECF No. 41, PageID.492–93.) Even without a medical opinion recommending surgery, her pleadings include medical records demonstrating that a physician found that hormone-caused clots could prove lethal. (ECF No. 1-K, PageID.79.) Wellpath Defendants claim that Plaster's pleadings demonstrate "individualized decisions" on Plaster's surgery requests. (ECF No. 42, PageID.498–99.) Although the exhibits show medical visits at which Plaster requested gender-affirming surgery, only one record states a rationale for the denials, and that rationale is scant: "Individual does not meet criteria." (ECF No. 1, PageID.25, 29, 31–34, 36–38, 40–43,

46–47, 50–52, 54.) Contrary to Wellpath Defendants' assertion, the records do not contradict Plaster's allegation of a de facto ban.

Taking her allegations as true and in the most favorable light, Plaster has put forth sufficient facts to support a plausible claim that the decision to deny her surgery was based on a ban rather than sound medical judgment. The Sixth Circuit gives less deference to the medical treatment provider when there was no medical judgment. *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 843 (W.D. Mich. 2012) (collecting cases). Plaster sufficiently alleges that the Wellpath Defendants knew of her serious condition, including her history of blood clots, and still denied her surgery without individualized consideration of her particular medical need. This evinces a conscious disregard of the substantial risk of harm to Plaster.

Accordingly, Wellpath Defendants' objection is **OVERRULED** and Plaster's Eighth Amendment claim against Ibrahim, Hill, Jindal, and Ali may proceed.

### D. Plaster's Motion for Appointment of Counsel

In her motion for appointment of counsel, Plaster states that: (1) she is indigent; (2) her case presents novel, complex issues; (3) she has

the reading level of a third grader and has no knowledge of federal litigation; (4) she has made repeated, unsuccessful efforts to obtain a pro bono lawyer; (5) the next stage of the case will likely require expert witnesses for the medical issues; (6) the prison limits the hours of access to the law library; and (7) the ends of justice would best be served if she were appointed counsel. (ECF No. 52, PageID.589–95.)

Under 28 U.S.C. § 1915, "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Although a district court has broad discretion in determining whether to appoint counsel for an indigent civil litigant, appointment of such counsel is not a constitutional right. *Levado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). When considering whether to appoint counsel, a court should consider the type of case, complexity of the facts and legal issues, the litigant's ability to represent themselves, and whether the claims presented are frivolous or have a small likelihood of success. *Id.* at 606.

Here, the Court finds that appointment of counsel at this stage of the proceedings is warranted. Plaster's Fourteenth and Eighth Amendment claims have survived as to some of the defendants, suggesting a reasonable chance of success on the merits if properly

litigated. Accordingly, the Court will refer this matter to the Court's pro bono program for the appointment of counsel. If counsel cannot be obtained, Plaster will be required to continue to represent herself.

## III. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the R&R dated June 9, 2026 (ECF No. 40) is **ADOPTED IN PART** as this Court's findings of fact and conclusions of law.

**IT IS FURTHER ORDERED** that Hill and Jindal's motion to dismiss (ECF No. 12) and Wellpath Defendants' motion to dismiss (ECF No. 18) are **DENIED**.

**IT IS FURTHER ORDERED** that Hill and Jindal's objections to the R&R (ECF No. 41) are **OVERRULED**, Wellpath Defendants' objections to the R&R (ECF No. 42) are **OVERRULED**, Plaster's objections to the R&R (ECF No. 44) are **OVERRULED**, and MDOC Defendants' third objection to the R&R (ECF No. 45) is **OVERRULED**. MDOC Defendants' first and second objections to the R&R (ECF No. 45) are **SUSTAINED**.

**IT IS FURTHER ORDERED** that MDOC Defendants' motion to dismiss (ECF No. 33) is **GRANTED IN PART** and **DENIED IN PART**,

more specifically it is: (1) **GRANTED** with respect to Blessman, Carey, Clark, Dawdy, McIntyre, and Sherry as to violations of the Eighth Amendment; (2) **GRANTED** with respect to Blessman, Carey, Clark, Dawdy, McIntyre, and Sherry as to violations of Michigan state law, for and consistent with the reasons stated in the R&R; (3) **DENIED** as to Jarrett and Cargor for violation of the Fourteenth Amendment; (4) **GRANTED** as to Washington and Sherry for violation of the ADA and RA; and (5) **GRANTED** as to Owens in any capacity for violation of the Fourth Amendment.

**IT IS FURTHER ORDERED** that Plaster's causes of action against Washington, Owens, Blessman, Carey, Clark, Dawdy, McIntyre, and Sherry are **DISMISSED**.

The remaining claims are: (1) Fourteenth Amendment claim against Cargor and Jarrett for denial of a search accommodation; and (2) Eighth Amendment claim against Ali, Hill, Ibrahim, and Jindal for withholding surgical intervention.

**IT IS FURTHER ORDERED** that, for and consistent with the reasons stated in the R&R, Plaster's motion for leave to amend the

complaint (ECF No. 25) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that, for and consistent with the reasons stated in the R&R, Plaster's cause of action against Chapman is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaster's motion for appointment of counsel (ECF No. 52) is **GRANTED**. The Court refers this matter to the pro bono program for the appointment of counsel.

**IT IS FURTHER ORDERED** that this matter is **STAYED** until either (1) pro bono counsel files an appearance, or (2) 90 days from the date of this order, whichever is earlier. If pro bono counsel cannot be obtained, the Court will lift the stay, and Plaster will proceed pro se.

**SO ORDERED**.

**s/Jonathan J.C. Grey**
JONATHAN J.C. GREY
United States District Judge

DATED: September 30, 2026

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2026.

**s/ S. Osorio**
Sandra Osorio
Case Manager